**In re J.W.**

Court of Common Pleas of Ohio,
Juvenile Division,
Ashland County.

No. 95148.

Decided March 10, 1997.

*John L. Good,* Ashland County Assistant Prosecuting Attorney, for the state.
*Sam J. Lett,* for the juvenile.

MICHAEL R. MCKINLEY, Judge.

This case is before the court upon a motion of the juvenile and his family to suppress statements made by him while under interrogation to the Ashland City Police.

There is no question the juvenile in this case was in custody while being interrogated. He was. There is no question whether he was advised of his rights, including the *Miranda* warnings. He was. The issue in this case is, quite simply, did he understand his rights and was he capable of withstanding, given his age, his background, and especially his learning disabilities, the pressure of a law enforcement interrogation while in custody of a police organization.

Detective Dennis Evans of the Ashland Police Department testified that he took this juvenile into custody, took him in a police cruiser to the Ashland Police Department, and interrogated him. He testified that he was kind to him, did not pressure him, and did his very best to explain at every step of the process what was happening. The court believes this is true.

Tina Sadowski was the juvenile's special education teacher at Osborn Elementary School in the Ashland City School District for the school year during which the event forming the basis of the complaint allegedly occurred. She testified that the juvenile was very limited intellectually, was very limited in socialization, had no friends to speak of, and, in her opinion, was truly incapable of realizing that the behavior of which he is charged was wrong and inappropriate.

The juvenile charged in this case was, at the time of this alleged offense, in a special education program of the Ashland City School District, specifically a learning disabilities program. This child is, as are a substantial number of children in this program, weak in the area of self-discipline; weak in the area of understanding morals, ethics and values; easily influenced by those around him; and vulnerable to saying what he thinks an authority person wants to hear. This he is likely to do without understanding the importance of whether what he is

saying is true or false, and without understanding the potential consequences of what he is saying, even when those potential consequences have been clearly explained to him. In other words, this child, with limited intellectual and social capabilities, is uniquely and importantly different. For that reason this court believes that it is an essential part of fairness that that unique and important difference be recognized and appropriately dealt with in a situation such as that presented by this case.

The court finds that Officer Evans, who is a very good officer, while doing his best to be fair, did not reach the level of protection necessary to assure that a child such as this be fully protected in accordance with his special educational and socially limited circumstances.

It is this court's opinion, and the court so rules, that in a situation like this, when the state, through a law enforcement agency, takes a child into custody for purposes of interrogation, with delinquent charges against the child to be interrogated a potential outcome, the officers of the interrogating agency must see that a person qualified, such as a special education teacher, an appropriate counsellor, or other capable specialist, is present during the interrogation to assure that the child to be interrogated is able to communicate accurately, understandably, truthfully, and free of any pressure or intimidation, whether intended or not. This did not happen in this case.

The court is aware that it is venturing in this case and with this decision into a somewhat new, unique, and uncharted area of the law as it relates to these unique kinds of human conditions and behaviors. The court is also aware that this country, including this community, is undergoing disturbing cultural changes which, in this court's opinion, result in unacceptable levels of uncivil and antisocial conduct that seriously challenge the very fiber of our free society. Nevertheless, whatever efforts we as a community and society undertake to address these problems, those efforts must be underpinned with fundamental fairness in our treatment of individuals, suspects, or otherwise. That is the heart of due process, and consequently the heart of our constitutional and judicial system.

Therefore, this special child, due to his special condition for which he is not responsible, is entitled to and should be provided with special protection against his own vulnerabilities if we are to preserve the essence of our justice system, which is fairness. To compromise fairness for expediency, to accept anything less than our best effort to provide it, is to irreparably compromise the system which we have been taught to trust and to believe in.

I do not for one minute wish to overburden and hinder our law enforcement agencies in their efforts to protect us all, as citizens, from the tragedy and hurt of being victims of crime and delinquency. Nevertheless, if we compromise funda-

**4**

mental fairness and dignity in that effort, that effort itself will be tainted and, therefore, entitled to no more respect than the act which the effort is intended to prevent.

It is for that reason that the court sustains the motion to this extent. The court orders that all incriminating statements made by this juvenile to Detective Evans of the Ashland Police Department be suppressed. The prosecution of this case may otherwise proceed.

There is one other aspect of this case that this court wishes to address. In this case the interrogation was not taped. The court believes that any interrogation of this nature should be taped, or better yet videotaped. It would have been very beneficial to this court, as I believe it would be to any court, if the court could have watched and listened to a videotape of the interrogation as it was happening. Such an opportunity would reduce significantly, if not eliminate completely, the need for the court to rely on interpretation and semantics in its effort to reach a decision that is right and fair both as to the facts and as to the law applicable to those facts, and both as to the state and the accused.

*Judgment accordingly.*